**John J. Gitlin, Esq.**
**State Bar No. 07986600**
**5323 Spring Valley Road, Suite 150**
**Dallas, Texas 75254**
**Telephone: (972) 385-8450**
**Telecopier: (972) 385-8460**
**COUNSEL FOR DEBTOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **ARTWORTH, INC.** | § | **CASE NO: 09-34300** |
| | § | |
| **Debtor.** | § | |

_____

### DEBTOR'S AMENDED CHAPTER 11 PLAN OF REORGANIZATION
_____

Artworth, Inc. hereby proposes the following Chapter 11 Plan of Reorganization pursuant to the provisions of section 1121 of the Bankruptcy Code:

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

1.1     **Rules of Interpretation.**   Unless otherwise specified, all Section, Article and Exhibit references in this Plan are to the respective Section in, Article of, or Exhibit to this Plan, as the same may be amended, waived or modified from time to time.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Words denoting the singular number shall include the plural number and vice versa.  In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.   In computing any period of time prescribed or allowed by this Plan, the provisions of the Bankruptcy Rule 9006(a) shall apply.

1.2     **Definitions.**   Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them

in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms (which appear in this Plan as capitalized terms) have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

1.2.1 **"Administrative Claim"** means a Claim for any cost or expense of administration of the Bankruptcy Cases under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate of the Debtor pursuant to 28 U.S.C. § 1930.

1.2.2 **"Administrative Claims Bar Date"** means the day that is thirty (30) days after the Confirmation Date, and represents the deadline for certain holders of Administrative Claims requiring approval from the Bankruptcy Court for their Allowance to file applications requesting the Allowance of same as provided for in section 3.1.2 of the Plan hereof.

1.2.3 **"Allowed"** as it relates to any type of Claim provided for under this Plan, a Claim: (i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules and as to which : (a) no proof of Claim has been timely filed and (b) no objection thereto has been timely filed; (ii) as to which a proof of Claim has been timely filed and either (a) no objection thereto has been timely filed or Debtor has not contested such Claim in a proceeding in the Bankruptcy Court or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been expressly allowed under the provisions of the Plan; or (iv) which is an Administrative Claim approved by Final Order of the Bankruptcy Court.

1.2.4 **"Allowed Administrative Claim"** means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to allow same; and (ii) an Administrative Claim which: (a) is incurred by the Debtor after the Petition Date in the ordinary course of his business operations or pursuant to an order enter by the Bankruptcy Court granting automatic administrative claim status; (b) is not disputed by the Debtor or the Reorganized Debtor; and (c) does not require approval from the Bankruptcy Court to become Allowed.

1.2.5 **"Allowed Priority Claim"** means a Priority Claim that has been Allowed (but only to the extent Allowed).

1.2.6 **"Allowed Secured Claim"** means a Secured Claim Allowed by Final Order of the Bankruptcy Court under section 506(a) of the Bankruptcy Code, but only to the extent, validity, and priority so Allowed.

1.2.7 **"Avoidance Actions"** means any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, except to the extent that any rights, claims, or actions are released or waived in this Plan.

1.2.8 **"Ballot"** means the ballot, the form of which has been approved by the Bankruptcy Court provided to each holder of a Claim entitled to vote to accept or reject the Plan.

1.2.9 **"Bankruptcy Case"** means the bankruptcy case initiated by Artworth in the Bankruptcy Court on the Petition Date, numbered as Case No. 09-34300

1.2.10 **"Bankruptcy Code"** means 11 U.S.C. §§ 101, *et. seq.,* in effect as of the Petition Date and as may have been or may be amended or supplemented since.

1.2.11 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

1.2.12 **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

1.2.13 **"Bar Date"** means January 26, 2010, the date set by the Bankruptcy Court as the deadline for filing proofs of Claim.

1.2.14 **"Business Day"** means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

1.2.15 **"Claim"** means a claim against the Debtor, the Estate and/or the property of the Debtor or the Estate, as such term is defined in section 101(5) of the Bankruptcy Code, arising prior to the Effective Date.

1.2.16 **"Creditor"** means the holder of any Claim entitled to distributions with respect to such Claim.

1.2.17 **"Class"** means one of the categories of Claims established under Article II of this

Plan.

1.2.18 **"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.2.19 **"Confirmation Hearing"** means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

1.2.20 **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemental.

1.2.21 **"Disallowed Claim"** means a Claim whether in whole or in part that (i) has been disallowed by a Final Order; (ii) is identified in the Schedules in an amount of zero dollars or unknown or as contingent, unliquidated, or disputed and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date.

1.2.22 **"Disclosure Statement"** means the Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, or as it may be altered, amended or modified from time to time in accordance with sections 1125, 1126(b) and 1145 of the Bankruptcy Code and Bankruptcy Rule 3018.

1.2.23 **"Disputed Claim"** means any Claim in whole or in part which has not become Allowed and which is not a Disallowed Claim. In the event that any portion of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the party responsible for the payment thereof, the objecting party, and the holder thereof agree otherwise; *provided, however,* that nothing in this definition of "Disputed Claim" is intended to nor does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of the Plan, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim shall be deemed to constitute a Disputed Claim unless and until the entry of a Final Order providing otherwise.

1.2.24 **"Effective Date"** means the first Business Day thirty (30) days after the

Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least thirty (30) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article XIV hereof are satisfied.

1.2.25 **"Estate"** means the bankruptcy estate created for the Debtor pursuant to section 541 of the Bankruptcy Code.

1.2.26 **"Executory Contract"** means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code.

1.2.27 **"Final Decree"** means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

1.2.28 **"Final Order"** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or petition of review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

1.2.29 **"Postpetition"** means at any time on or after the Petition Date.

1.2.30 **"Prepetition"** means at any time prior to the Petition Date.

1.2.31 **"Priority Claim"** means a Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim.

1.2.32 **"Pro Rata Share"** means, with respect to any distribution to a Class under the Plan, as of any particular distribution date, proportionate sharing pursuant to which the ratio of the cumulative amount of all funds distributed on account of an Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the cumulative amount distributed to such Class to the total amount of all Allowed Claims and Disputed Claims classified into such Class.

1.2.33 **"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemental from time to

time in accordance with Bankruptcy Rule 1009.

1.2.34 **"Secured Claim"** means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtor or the Estate to the extent such lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance or subordination under the Bankruptcy Code or other applicable non-bankruptcy law, but only to the extent that such Claim is secured within the meaning of section 506(a) of the Bankruptcy Code; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

1.2.35 **"Secured Creditor"** means the holder of a Secured Claim.

1.2.36 **"Subordinated Claim"** means a Claim that is subordinated pursuant to sections 510 of the Bankruptcy Code, or by Order of the Bankruptcy Court, or otherwise.

1.2.37 **"Unsecured Claim"** means any Claim that is not secured by a valid and enforceable lien against any asset of the Debtor or the Estate, but excluding any Administrative Claim, Priority Claim, a Priority Tax Claim, Secured Claim, and including a Subordinated Claim if not secured by a valid and enforceable lien against any asset of the Debtor or the Estate.

1.2.38 **"Unsecured Creditor"** means the holder of an Unsecured Claim.

1.2.39 **"Voting Period"** means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS

2.1 **Classification Generally.** The Plan has provided for the payment of Administrative Claims which is treated in the Plan as unclassified Claims and a total of eight (8) separate classes of classified claims. Claims which are substantially similar have been placed in one Class as provided pursuant to 11 U.S.C. § 1122.

## ARTICLE III.
## PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS

3.1 **Allowed Administrative Claims.**

3.1.1 **Administrative Claim Applications and Deadline.** Holders of Administrative Claims, other than: (a) Allowed Administrative Claims; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary

course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Titled 28, United States Code; (i) must file an application with the Bankruptcy Court for allowance of the Administrative Claim; (ii) serve a copy of such application on counsel for the Debtor, the United States Trustee and all other parties otherwise entitled to notice thereof. Failure to file and serve such application and notice by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged.

      3.1.2 **Treatment of Allowed Administrative Claims.** In full and final satisfaction of Allowed Administrative Claims, each Allowed Administrative Claim shall, unless otherwise agreed, be paid only by the Reorganized Debtor in full in Cash by no later than the latter of : (a) ten (10) days after the Effective Date; or (b) ten (10) days after becoming an Allowed Administrative Claim; *provided, however,* that Allowed Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court shall be paid by the Debtor and/or the Reorganized Debtor, as appropriate, in accordance with the agreements related thereto, and subject to the Debtor's and/or the Reorganized Debtor's, as appropriate, right to contest the allowance or payment of same; *provided further, however,* that from and after the Effective Date, any fees and charges which are assessed under Chapter 123, Title 28, United States Code, in relation to the Bankruptcy Case shall be paid by the Debtor or Reorganized Debtor as they become due.

### ARTICLE IV.
### PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS; IDENTIFICATION OF IMPAIRED CLASSES

    4.1 **Class 1: Allowed Priority Claims.** This class consists of the tax claim for ad valorem taxes owed to various independent school district taxing authorities and Johnson County taxing authority in the approximate aggregate amount of $11,578.00.

      4.1.1 **Treatment.** Each holder of an Allowed Priority Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim as follows:

    The amount of such Allowed Priority Claim, in cash, in deferred monthly installments of thirty-five equal payments commencing thirty days following the Effective Date and continuing on the fifth day of each month thereafter until paid in full. Notwithstanding the foregoing, to the extent that a

Priority Claimant has a claim for taxes against a particular property and Debtor sells such property, the Priority Claimant shall be paid the full amount of its claim at closing on the property.

To the extent provided under applicable statute and not otherwise voidable under the provisions of the Bankruptcy Code, the taxing authorities shall retain any statutory liens on the real property for which such taxes have been assessed pending payment by Debtor or the Reorganized Debtor, where applicable, of the full amount of the Claim.

4.1.2 **Impairment.** Class 1 is impaired under the Plan.

4.2 **Class 2: Secured Claim of Legacy Plan and Trust**

4.2.1 **Determination of Secured Status.**

Legacy Plan and Trust holds a claim against the debtor in the original principal sum of $43,000.00 evidenced by a promissory note ("Note") and secured by a Deed of Trust ("Deed") on the real property located at 1105 Pecan Ridge, Venus, TX 76084 (the "Pecan Ridge Property"). Together the Note, Deed and Modification and Extension Agreement shall be referred to as the Loan Documents.

4.2.2 **Treatment.**

Debtor and the Reorganized Debtor, as applicable, shall pay the Class 2 Creditor the full amount of its Allowed Claim in monthly installments of $650.00, which payments shall be applied to payment of principal, interest, taxes and insurance, the first payment commencing 30 days following the Effective Date and continuing on the 10th day of each month thereafter until the Class 2 Creditor is paid in full. Interest on the outstanding principal amount shall be at a rate of 11% per annum. The Loan Documents, including without limitation, the Deed shall be modified so as to delete any reference to cross-collateralization for any other indebtedness of the debtor to the Class 2 Creditor other than the indebtedness relating solely to the Pecan Ridge Property ("Indebtedness") , including the following provision in the Deed:

"This conveyance is also made in trust to secure payment of all other present and future debts that Grantor may owe to Beneficiary, regardless of how the other debt is incurred or evidenced."

Notwithstanding anything to the contrary in the Loan Documents, the assignment of rents shall not be absolute but shall be limited to the granting of a security interest to the Class 2 Creditor.

The Loan Documents shall be modified so as to delete any reference to the assessment against the Debtor/Reorganized Debtor of any pre payment penalty or premium. Debtor or the Reorganized Debtor shall be entitled to prepay the Indebtedness in whole or in part prior to Maturity without

premium or the consent of the Class 2 Creditor.

The Loan Documents shall be modified so that the Maturity Date of the Note shall be the first day of the thirtieth month following the Effective Date.

The Class 2 Creditor shall retain its lien on the Pecan Ridge Property granted to it by, but only by the Deed and such lien shall be limited to the payment in full of the Indebtedness.

Notwithstanding the foregoing, Debtor or the Reorganized Debtor reserves the right at any time to transfer title to the Pecan Ridge Property to the Class 2 Creditor in full satisfaction of the Class 2 Creditor's claims.

The Class 2 Creditor is impaired under the terms of the Plan.

### 4.2  Class 3: Secured Claim of Legacy Plan and Trust

#### 4.3.1  Determination of Secured Status.

Legacy Plan and Trust holds a claim against the debtor in the original principal amount of $53,500.00 evidenced by a promissory note ("Note") and secured by a Deed of Trust ("Deed") on the real property located at 8021 Pleasant Run, Alvarado, Texas ("Pleasant Run Property"). Together the Note, Deed and Modification and Extension Agreement shall be referred to as the Loan Documents.

#### 4.3.2  Treatment.

Debtor and the Reorganized Debtor, as applicable, shall pay the Class 3 Creditor the full amount of its Allowed Claim in monthly installments of $730.00, which payments shall be applied to payment of principal, interest, taxes and insurance, the first payment commencing 30 days following the Effective Date and continuing on the 10th day of each month thereafter until the Class 3 Creditor is paid in full.  Interest on the outstanding principal amount shall be at a rate of 11% per annum. The Loan Documents, including without limitation, the Deed shall be modified so as to delete any reference to cross-collateralization for any other indebtedness of the debtor to the Class 3 Creditor other than the indebtedness relating solely to the Pleasant Run Property ("Indebtedness"), including the following provision in the Deed:

"This conveyance is also made in trust to secure payment of all other present and future debts that Grantor may owe to Beneficiary, regardless of how the other debt is incurred or evidenced."

Notwithstanding anything to the contrary in the Loan Documents, the assignment of rents shall not be absolute but shall be limited to the granting of a security interest to the Class 3 Creditor.

The Loan Documents shall be modified so as to delete any reference to the assessment against the Debtor/Reorganized Debtor of any pre payment penalty or premium. Debtor or the Reorganized Debtor

shall be entitled to prepay the Indebtedness in whole or in part at any time prior to Maturity without premium or the consent of the Class 3 Creditor.

The Loan Documents shall be modified so that the Maturity Date of the Note shall be the first day of the thirty-sixth month following the Effective Date.

The Class 3 Creditor shall retain its lien on the Pecan Ridge Property granted to it by, but only by the Deed and such lien shall be limited to the payment in full of the Indebtedness.

Notwithstanding the foregoing, Debtor or the Reorganized Debtor reserves the right at any time to transfer title to the Pleasant Run Property to the Class 3 Creditor in full satisfaction of the Class 3 Creditor's claims.

### 4.3.3  Impairment.

The Class 3 Creditor is impaired under the Plan.

### 4.4  Class 4: Secured Claim of Legacy Plan and Trust

#### 4.4.1  Determination of Secured Status.

Legacy Plan and Trust holds a claim against the debtor in the approximate amount of $37,635.00 secured by a Deed of Trust on the real property located at 11303 Stuart Parkway, Lillian, TX 76061 (the "Stuart Parkway Property").

#### 4.4.2  Treatment.

Debtor shall transfer title to the Stuart Parkway Property to the Class 4 Creditor on the Effective Date in full satisfaction of the Class 4 Creditor's claims.

#### 4.4.3  Impairment.

The Class 4 Creditor is impaired under the Plan.

### 4.5  Class 5: Secured Claim of Legacy Plan and Trust

#### 4.5.1  Determination of Secured Status.

Legacy Plan and Trust holds a claim against the debtor in the original principal amount of $53,000.00 evidenced by a promissory note ("Note") and secured by a Deed of Trust ("Deed") on the real property located at 3304 Little Elm Creek, Alvarado, TX 76009 (the "Little Elm Property"). Together the Note, Deed and Modification and Extension Agreement shall be referred to as the Loan Documents.

#### 4.5.2  Treatment.

Debtor and the Reorganized Debtor, as applicable, shall pay the Class 5 Creditor the full amount of its Allowed Claim in monthly installments of $800.00, which payments shall be applied to payment

of principal, interest, taxes and insurance, the first payment commencing 30 days following the Effective Date and continuing on the 10th day of each month thereafter until the Class 5 Creditor is paid in full. Interest on the outstanding principal amount shall be at a rate of 11% per annum. The Loan Documents, including without limitation, the Deed shall be modified so as to delete any reference to cross-collateralization for any other indebtedness of the debtor to the Class 5 Creditor other than the indebtedness relating solely to the Little Elm Property ("Indebtedness"), including the following provision in the Deed:

"This conveyance is also made in trust to secure payment of all other present and future debts that Grantor may owe to Beneficiary, regardless of how the other debt is incurred or evidenced."

Notwithstanding anything to the contrary in the Loan Documents, the assignment of rents shall not be absolute but shall be limited to the granting of a security interest to the Class 5 Creditor.

The Loan Documents shall be modified so as to delete any reference to the assessment against the Debtor/Reorganized Debtor of any pre payment penalty or premium. Debtor or the Reorganized Debtor shall be entitled to prepay the Indebtedness in whole or in part at any time prior to Maturity without premium or the consent of the Class 5 Creditor.

The Loan Documents shall be modified so that the Maturity Date of the Note shall be the first day of the thirtieth month following the Effective Date.

The Class 5 Creditor shall retain its lien on the Little Elm Property granted to it by, but only by the Deed and such lien shall be limited to the payment in full of the Indebtedness.

Notwithstanding the foregoing, Debtor or the Reorganized Debtor reserves the right to transfer title to the Little Elm Property to the Class 5 Creditor in full satisfaction of the Class 5 Creditor's claims.

**Impairment.** The Class 5 Creditor is impaired under the Plan.

### 4.6   Class 6: Secured Claim of Richard K. Irwin, PC

#### 4.6.1   Determination of Secured Status.

Richard K. Irwin, PC holds a claim against the debtor in the approximate amount of $26,859.00 evidenced by a promissory note ("Note") and secured by a Deed of Trust ("Deed") on the real property located at 1320 Honeysuckle, Mansfield, TX 76063 (the "Honeysuckle Property"). Together the Note, Deed and Modification and Extension Agreement shall be referred to as the Loan Documents.

#### 4.6.2   Treatment.

Debtor and the Reorganized Debtor, as applicable, shall pay the Class 6 Creditor the full amount of its Allowed Claim in monthly installments of $587.00, which payments shall be applied to payment of principal, interest, taxes and insurance, the first payment commencing 30 days following the Effective Date and continuing on the 10th day of each month thereafter until the Class 6 Creditor is paid in full. Interest on the outstanding principal amount shall be at a rate of 11% per annum. The Loan Documents, including without limitation, the Deed shall be modified so as to delete any reference to cross-collateralization for any other indebtedness of the debtor to the Class 6 Creditor other than the indebtedness relating solely to the Honeysuckle Property ("Indebtedness"), including the following provision in the Deed:

"This conveyance is also made in trust to secure payment of all other present and future debts that Grantor may owe to Beneficiary, regardless of how the other debt is incurred or evidenced."

Notwithstanding anything to the contrary in the Loan Documents, the assignment of rents shall not be absolute but shall be limited to the granting of a security interest to the Class 6 Creditor.

The Loan Documents shall be modified so as to delete any reference to the assessment against the Debtor/Reorganized Debtor of any pre payment penalty or premium. Debtor or the Reorganized Debtor shall be entitled to prepay the Indebtedness in whole or in part at any time prior to Maturity without premium or the consent of the Class 6 Creditor.

The Loan Documents shall be modified so that the Maturity Date of the Note shall be the first day of the thirty-sixth month following the Effective Date.

The Class 6 Creditor shall retain its lien on the Little Elm Property granted to it by, but only by the Deed and such lien shall be limited to the payment in full of the Indebtedness.

Notwithstanding the foregoing, Debtor or the Reorganized Debtor reserves the right to transfer title to the Honeysuckle Property to the Class 7 Creditor in full satisfaction of the Class 7 Creditor's claims.

**Impairment.** The Class 6 Creditor is impaired under the Plan.

**4.7   Class 7: Secured Claim of Gwen Irwin, Trustee**

4.8.1   **Determination of Secured Status.**

Gwen Irwin, Trustee holds a claim against the debtor in the original principal amount of $39,000.95 evidence by a promissory note ("Note") and secured by a Deed of Trust ("Deed") on the real property located at 8516 Sage Meadow, Alvarado, Texas (the "Sage Meadow Property"). Together the Note, Deed and Modification and Extension Agreement shall be referred to as the Loan Documents.

### 4.7.2    Treatment.

Debtor and the Reorganized Debtor, as applicable, shall pay the Class 7 Creditor the full amount of its Allowed Claim in monthly installments of $692.00, which payments shall be applied to payment of principal, interest, taxes and insurance, the first payment commencing 30 days following the Effective Date and continuing on the 10th day of each month thereafter until the Class 7 Creditor is paid in full. Interest on the outstanding principal amount shall be at a rate of 11% per annum. The Loan Documents, including without limitation, the Deed shall be modified so as to delete any reference to cross-collateralization for any other indebtedness of the debtor to the Class 7 Creditor other than the indebtedness relating solely to the Sage Meadow Property ("Indebtedness"), including the following provision in the Deed:

"This conveyance is also made in trust to secure payment of all other present and future debts that Grantor may owe to Beneficiary, regardless of how the other debt is incurred or evidenced."

Notwithstanding anything to the contrary in the Loan Documents, the assignment of rents shall not be absolute but shall be limited to the granting of a security interest to the Class 7 Creditor.

The Loan Documents shall be modified so as to delete any reference to the assessment against the Debtor/Reorganized Debtor of any pre payment penalty or premium. Debtor or the Reorganized Debtor shall be entitled to prepay the Indebtedness in whole or in part at any time prior to Maturity without premium or the consent of the Class 7 Creditor.

The Loan Documents shall be modified so that the Maturity Date of the Note shall be the first day of the thirtieth month following the Effective Date.

The Class 7 Creditor shall retain its lien on the Sage Meadow Property granted to it by, but only by the Deed and such lien shall be limited to the payment in full of the Indebtedness.

Notwithstanding the foregoing, Debtor or the Reorganized Debtor reserves the right to transfer title to the Sage Meadow Property to the Class 7 Creditor in full satisfaction of the Class 7 Creditor's claims.

**Impairment.** The Class 7 Creditor is impaired under the Plan.

### 4.8   Class 8: Secured Claim of Compass Bank

#### 4.9.1   Determination of Secured Status.

Compass Bank holds a claim against the debtor in the approximate amount of $89,445.00 secured by a Deed of Trust on the real property located at 1601 CR 607, Alvarado, TX 76009 (the "CR 607 Property").

### 4.8.2 Treatment.

Debtor and the Reorganized Debtor, as applicable, shall pay the Class 8 Creditor the full amount of its Allowed Claim in monthly installments of $400.00, the first payment commencing on the Effective Date and continuing on the 10th day of each month thereafter until the Class 8 Creditor is paid in full. The Class 8 Creditor's claim shall be satisfied on or before ninety days from the Effective Date by either being paid in full the Allowed Amount of its claim or Debtor's transfer of title to the Class 8 Creditor in full satisfaction of its claim.

### 4.8.3 Impairment.

The Class 8 Creditor is impaired under the Plan.

## 4.9 Class 9: Secured Claim of First Financial Bank, N.A.

### 4.9.1 Determination of Secured Status.

First Financial Bank, N.A. holds a claim against the debtor in the approximate amount of $49,939.78 secured in part by a security interest in equipment and a trailer ("Equipment").

### 4.9.2 Treatment.

Debtor shall pay the Class 9 Creditor equal monthly installments of $400.00 commencing on the fifth day following the Confirmation Date and continuing on the fifth day each month thereafter until the Class 9's Allowed Claim is paid in full. Interest shall accrue on the outstanding principal at the rate of 6% per annum. Debtor reserves the right to transfer all of the collateral securing the Class 9 Creditor's claim to the Class 9 Creditor in full satisfaction of its claim.

### 4.9.3 Impairment.

The Class 9 Creditor is impaired under the Plan.

## Class 10: Unsecured Claims

### 4.10.1 Class Members.

This class is composed of unsecured trade debt creditors consisting of the following:

| | |
|---|---|
| Eagle Drywall: | $750.00; |
| Fort Worth Lighting: | $1,097.27; |
| HD Supply: | $1,465.17; |
| Kelly Moore Paint: | $1,034.93; |
| Moore Supply Co. | $3,321.21. |

### 4.10.2 Treatment.

This Class shall be paid in full the Allowed amount of their claims payable in twenty-four equal

monthly installments commencing on the fifth day of the month following the Effective Date and continuing on the fifth day of each month thereafter until paid in full.

**4.10.3 Impairment.**

This Class is impaired under the Plan.

**Class 11: Unsecured Claims**

**4.11.1 Class Members.** This class is composed of the unsecured claim of Greg Reynolds Construction in the amount of $17, 150.00 for construction of the real property at 1601 CR 607, Alvarado, TX 76009 (the "CR 607 Property")

**4.11.2 Treatment.**

This Class shall be paid in full the Allowed amount of its claims payable in equal monthly installments of $150.00 commencing on the fifth day of the month following the Effective Date and continuing on the fifth day of each month thereafter until paid in full.

**4.11.3 Impairment.**

This Class is impaired under the Plan.

**ARTICLE V.**
**ACCEPTANCE OR REJECTION OF PLAN**

**5.1**     **Impairment Controversies.** If a controversy arises as to whether any Class of Claims is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class of Claims under this Plan.

**5.2**     **Classes and Claims Entitled to Vote.**     All Classes are impaired under the Plan and therefore each Class is entitled to vote on Debtor's Plan.

**ARTICLE VI.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**6.1**     **Funding of Plan Obligations.**

    **6.1.1**     **Secured Creditors**

    **6.1.2**     All of the creditors shall be paid their respective monthly payments from the revenues generated by the real properties. Debtor currently has the sum of $10,000.00 reserved to insure that all monthly payments are made under the terms of Debtor's Plan to the extent that there may be a shortfall in the collection of the rental revenues which are being currently collected from the rental

properties. Additionally, as discussed more fully in Debtor's Disclosure Statement, Debtor is currently marketing three of the Properties, and, subject to market conditions, intends to market other of the Properties over the term of its Plan.

## ARTICLE VII.

## PROVISIONS FOR THE RESOLUTION AND TREATMENT OF
## <u>DISPUTED AND CONTINGENT CLAIMS</u>

7.1 **<u>Standing to Object to Claims.</u>** In addition to all other parties that may otherwise have standing to object to a Claim if the Reorganized Debtor is obligated to pay said Claim under the Plan, the Debtor and the Reorganized Debtor shall have specific standing to object to the allowance of said Claim.

7.2 **<u>Objection Deadline.</u>** All objections to Claims shall be served and filed by the Effective Date; however, the Objection Date shall not apply to disputed Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. Any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to by the Debtor or Reorganized Debtor. Any Contested Claim may be litigated to Final Order.

7.3 **<u>Creditor Response to Objection.</u>** With respect to any objection to a Claim by the Debtor or the Reorganized Debtor, prior to the expirations of thirty (30) days from the date of service of the objection, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Debtor and/or the Reorganized Debtor and all parties who request notice of such matters. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the Objection.

7.4 **<u>No Waiver of Right to Object.</u>** Except as expressly provided in the Plan, nothing contained in the Disclosure Statement, the Plan, or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtor's or other appropriate party-in-interest's right to object to any Claim.

7.5 **<u>Rights Under Section 505.</u>** All Claims for taxes by Governmental Units shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code. The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of,

and in conjunction with, any Objection to any claim for taxes by a Governmental Unit.

7.6　**Allowance of Disputed Claims.**　Nothing contained in the Plan, the Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely proof of Claim, and the holder of such Disputed Claim who is required to file a proof of Claim and fails to do so, shall receive no distribution through the Plan and the Claim shall be discharged.　The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship, and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable.　The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim.　Exclusive venue for a proceeding involving a Disputed Claim shall be in the Bankruptcy Court or in a court of competent jurisdiction located in Dallas County, Texas.　Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court.　The Reorganized Debtor shall retain all rights of removal to federal court as to any proceeding involving a Disputed Claim.

7.7　**Allowance of Certain Claims.**　All Disputed Claims shall be liquidated and determined as follows:

7.7.1　**Application of Adversary Proceeding Rules.**　Unless otherwise ordered by the Bankruptcy Court, the proceedings involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules.　However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings to any proceeding involving a Disputed Claim.　The Debtor or Reorganized Debtor may, at their election, make and pursue any Objection to a Claim in the form of an adversary proceeding.

7.7.2　**Offsets.**　The Debtor and Reorganized Debtor shall be vested with and retain all rights of offset or recoupment and all counterclaims against any holder of a Claim, unless specifically released in this Plan.

7.8　**Amendments to Claims; Claims Filed After the Confirmation Date.**　Except as otherwise provided in the Plan, a Claim may not be filed with the Bankruptcy Court after the Bar Date or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Reorganized Debtor.

# ARTICLE VIII.
## MAINTENANCE OF CAUSES OF ACTION AND RIGHTS

8.1     **Generally.**     The Plan reserves and preserves all claims and causes of action, defenses, setoffs, recoupments, and claim objections held by the Debtor or his Estate.

# ARTICLE IX.
## ASSUMPTION OF EXECUTORY CONTRACTS

**9**.1 Debtor hereby assumes all leases between Debtor as lessor and any tenant of the real properties owned by Debtor at the time of the Confirmation Date.

# ARTICLE X.
## THE REORGANIZED DEBTOR

10.1     The Reorganized Debtor is solely and exclusively responsible for the carrying out of the provisions of the Plan. Upon Confirmation, the Reorganized Debtor shall be vested with all assets of the Debtor and the Bankruptcy Estate, tangible or intangible, including without limitations all claims and causes of action arising before or after the Confirmation Date.

10.2     The current officer, director and sole shareholder of the Debtor is Angela Black who shall also serve as the sole officer and director of the Reorganized Debtor and retain her shareholder interest in the Reorganized Debtor. Ms. Black's shall receive no salary.

# ARTICLE XI.
## CONDITIONS PRECEDENT

11.1     **Conditions Precedent to Confirmation and Effectiveness of Plan.**     The Plan shall not become effective until the following conditions shall have been satisfied or waived by the Plan Proponents, as determined in their sole discretion: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Plan Proponent.

# ARTICLE XII.
## EFFECTS OF PLAN CONFIRMATION

12.1     **Discharge of the Reorganized Debtor.**     The terms, covenants and consideration

under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor, the Reorganized Debtor or the assets, including, without limitation, all Unsecured Claims or Secured Claims. Except as otherwise expressly provided herein, upon the Effective Date, both the Reorganized Debtor and its successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of any kind specified in section 501(g), 502(h), or 502(l) of the Bankruptcy Code, whether or not: (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted this Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Reorganized Debtor and his successors-in-interest and assigns other that those obligations specifically set forth pursuant to this Plan.

12.2 **Injunction.** Provided that the Effective Date occurs, the entry of the Confirmation Order shall and shall be deemed to permanently enjoin all Persons that have held, currently hold or may hold a Claim or other debt or liability against the Estate as provided under Section 524 of the Bankruptcy Code, including, without limiting the foregoing, from taking any of the following actions on account of such Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, the Estate, or the Reorganized Debtor with respect to any property to be distributed under the Plan including funds or reserves held or maintained by any of them pursuant to this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, or the Reorganized Debtor with respect to any property to be distributed under the Plan including funds or reserves held or maintained by any of them pursuant to this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtor, the Estate, or the Reorganized Debtor with respect to any property to be distributed under the Plan including funds or reserves held or maintained by any of them pursuant to this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtor, the Estate, or the Reorganized Debtor with respect to any property to be distributed under the Plan, including funds or reserves held or maintained by any of them pursuant to this Plan in any way that does not conform to, or comply, or is inconsistent with, the

provisions of the Plan; *provided, however,* that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or from appealing the Confirmation Order.

12.3    **No Liability for Solicitation or Participation.**    Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

12.4    **Term of Injunction and Stays.**    Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise and in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date of the Plan as to the Debtor and his Estate and all Assets; *provided, however,* that any injunction issued by this Plan and the Confirmation Order shall not be subject to the foregoing and shall be perpetual.

12.5    **Release of Liens.**    Except as otherwise provided in this Plan or the Confirmation Order, all liens, security interests, deeds of trust, or mortgages against property of the Estate shall be released, terminated, and nullified.

**ARTICLE XIII.**
**MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN**

13.1    **Modification of this Plan.**    The Plan Proponent may alter, amend or modify this Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Substantial Consummation of this Plan, any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan; *provided, however,* prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

13.2    **Revocation or Withdrawal of this Plan.**    The Plan Proponent reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Plan Proponent revokes

or withdraws this Plan prior to the Confirmation Date, this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**ARTICLE XIV.**
**RETENTION OF JURISDICTION**

14 **Jurisdiction of Bankruptcy Court.** Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

14.1    To hear and determine motions, applications, adversary proceeding, and contested matters pending or commenced after the Effective Date;

14.2    To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

14.3    To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

14.4    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

14.5    To construe and to take any action to enforce the Plan and the Confirmation Order;

14.6    To issue such orders as may be necessary for the implementation, execution and consummation of the Plan and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and the Confirmation Order;

14.7    To hear and determine any applications to modify the Plan, to cure any defect or omissions or to reconcile any inconsistency in the Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

14.8    To hear and determine all applications for Professional Claims;

14.9    To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover Assets

that consist of Claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting Assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor, the Estate or the Reorganized Debtor, including, without limitation, matters concerning federal, state, local and other taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; and to hear and determine any claim or cause of action held by the Bankruptcy Estate or the Reorganized Debtor;

14.10   To hear and determine other issues presented or arising under the Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with the Plan;

14.11   To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

14.12   To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and

14.13   To enter the Final Decree.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

15.1   **Payment of Statutory Fees.**   All fees payable pursuant to section 1930 of Title 28 of United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code and arising prior to the Effective Date, shall be paid by the Estate on or before the Effective Date or by the Reorganized Debtor.

15.2   **No Admissions.**   Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any classification of any Claim or Equity Interest.

15.3   **Plan Controls.**   To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

15.4   **Governing Law.**   Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan,

without giving effect to the principles of conflicts of law.

15.5 **Substantial Consummation of Plan.** The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

15.6 **Successors and Assigns.** The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

15.7 **Severability.** Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect.

15.8 **Notices and Distributions.** On and after the Effective date, all notices, requests and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Expense Claim filed by or on behalf of such holder; or (ii) if there is not such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtor. Any holder of a Claim may designate another address for the purposes of this Section by providing the Reorganized Debtor, as otherwise appropriate, written notice of such address, which notice will be effective upon receipt by the Reorganized Debtor.

15.9 **Escrow Account Surplus.** In the event that the Escrow Account pays in full all Class 4, 5 and Priority Allowed Claims including with interest as provided for in the Plan, and funds remain in the Escrow Account, the Escrow Account shall remit and transfer all such remaining funds to the Reorganized Debtor and upon such remittance shall be terminated.

15.10 **Binding Effect.** The Plan shall be binding on and inure to the benefit of the holders of Claims (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns.

15.11 **Other Documents and Actions.** The Debtor and the Reorganized Debtor may execute such documents and take such other action as is reasonable, necessary, or appropriate to effectuate the transactions provided for in this Plan.

# ARTICLE XIII.
## CONFIRMATION REQUEST

The Plan Proponent hereby requests confirmation of this Plan pursuant to Section 1129(a) of the Bankruptcy Code.

**DATED: May 3, 2010**

**ARTWORTH, INC.**
**DEBTOR**

_/s/ Angela Black_____ __
By:     Angela Black
Its:     President

_____/s/ John J. Gitlin_____
John J. Gitlin, Esq.
State Bar No. 07986600
5323 Spring Valley Road
Suite 150
Dallas, Texas 75254
Telephone: (972) 385-8450
Telecopier: (972) 385-8460

**ATTORNEY FOR DEBTOR-IN-POSSESSION**